UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:

AISHIA PETERSEN,

   Plaintiff,

v.

ANTHROPOLOGIE INC.,

   Defendant.
_____/

**COMPLAINT FOR INJUNCTIVE RELIEF**

**COMES NOW**, Plaintiff Aishia Petersen ("Plaintiff "or "Petersen"), by and through undersigned counsel, files this Complaint and sues Defendant, ANTHROPOLOGIE Inc, for Permanent Injunctive Relief pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA"), 28 U.S.C. §2201 and 2202 as well as 28 CFR Part 36 Regulations. Plaintiff state as follows:

**INTRODUCTION**

1. This Court has jurisdiction over this case based on federal question jurisdiction, as provided in 28 U.S.C. §1331 and the provisions of the Americans with Disabilities Act, (hereinafter, "ADA").

2. Plaintiff is a visually impaired and legally blind person (disabled) who requires assistance through screen-reading to navigate and communicate with business through the internet and its innumerous applications using her browser in her mobile phone.  Plaintiff uses

1

the term "blind" or "visually impaired" as legally blind. Disable as defined by ADA and Amendment acts of 2008, 42 USC §12101 (ADAAA).

3.Plaintiff brings this action against Defendant for providing a digital business mobile application (running on mobile devices such as Iphone) that is not fully accessible usable by visually impaired consumers. The mobile application at issue is available to customers for download on customers mobile phones ("mobile app").

4. Defendant developed the mobile app and had an option during development to make fully accessible to screen-readers, but opted not to do so. Accessibility is an optional feature in mobile app development. Iphone (Apple) platform offers developers accessibility tools to aid them in creating an accessible user experience for all users, including those with a disability or impairment.

5. The Defendant distributes its mobile application to millions of customers through their phone in the App store for IPhones.

6. Defendant offers its mobile app to the general public from which it sells a variety of fashion clothing. Consumers require the ability to purchase goods and services anytime and from anywhere, even on the go. Defendant's mobile app allows mobile device users to shop on a mobile platform through an internet connection to Wi-Fi or cellular data so that users can make purchases, locate stores, and explore product offerings on the go.

7. Defendant has subjected itself to the ADA because Defendant's app is offered as a tool to communicate between the business and consumers to sell its products from its brick and mortar stores, which are places of public accommodation. As a result, the app must interact with Defendant's stores and the public, and in doing so must comply with the ADA, which means it

must not discriminate against individuals with disabilities and may not deny full and equal enjoyment of the goods and services afforded to the general public.

8. In the statutory text, Congress determined that "individuals with disabilities continually encounter various forms of discrimination," including "communication barriers". 42 U.S.C. § 12182(a).

9. Blind and visually impaired consumers must use the assistive technology on the mobile phone to access business mobile app content. The mobile app must be designed and programmed to work with the assistive Accessibility feature available on the Apple IPhones. Defendant's app, however, contains digital barriers which limit the ability of blind and visually impaired consumers to access it.

10. Defendant's mobile application is not fully or equally accessible to blind or visually impaired consumers in violation of the "ADA." As a result, Plaintiff seeks a permanent injunction to cause a change in ANTHROPOLOGIE Inc ("Defendant" or "ANTHROPOLOGIE") policies, practices and procedures so that Defendant's mobile application will become, and remain, accessible to blind. Plaintiff seeks injunctive relief, attorneys' fees and costs, including, but not limited to, court costs and expert fees, pursuant to Title III of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§s 12181-12189 ("ADA") and 42 U.S.C. 2000a-3(a). *See also* 28 U.S.C. 2201 and 2202 as well as ADA 28 CFR Part 36 Regulations.

11. Throughout the ADA, "auxiliary aids and services" refers to techniques and devices to overcome barriers in communicating with people who have visual and hearing impairments, among other things. See 42 U.S.C. 12103(1).

12. Implementing these provisions, see 42 U.S.C. § 12186(b), the Attorney General's Title III regulations require public accommodations to "furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulations specifically list "screen reader software," "magnification software," and "accessible electronic and information technology" as among the auxiliary aids that the statute requires. 28 C.F.R. § 36.303(b)(2).

13. Plaintiff is sui juris, and he is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA"). Defendant's failure to design, construct, maintain, and operate its mobile application to be fully and equally accessible to and independently usable by Plaintiff, constitutes in Defendant's denial of full and equal access to its mobile app, and therefore denial of its products and services offered thereby in conjunction with its physical location(s), resulting in a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

14. Defendant owns and operates the mobile e-commerce application and several ANTHROPOLOGIE's stores that are located in Florida.

15. This case arises out of the fact that Defendant ANTHROPOLOGIE has operated its business in a manner and way that effectively excluding individuals who are visually impaired from access to Defendant mobile e-commerce application based upon Defendant's failure to provide auxiliary aids and services for effective communications.

16. Plaintiff seeks injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

17. Plaintiff, a legally blind person, is impeded to access and communicate with Defendant effectively and timely such that allowing access to Defendant's various business

locations; as such impediment as rendered Defendant's physical places of accommodation not fully accessible to the visually impaired.

18. Plaintiff has downloaded and attempted to patronize Defendant's mobile application in the past and intends to continue to make further attempts to patronize Defendant's mobile app. Plaintiff would like to pre-shop Defendant's merchandise and learn about sales or discounts before going to Defendant's brick and mortar location. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur on Defendant's app, Plaintiff will continue to be denied full and equal access to the app as described and will be deterred from fully using Defendant's app or shopping at the physical locations.

19. Plaintiff continues to attempt to utilize the Defendant's mobile app and plans to continue to attempt to utilize the app in the near future for upcoming holidays and general purchase.

20. Plaintiff has suffered, and continues to suffer, frustration and humiliation as the result of the discriminatory conditions present at Defendant's mobile application. By continuing to operate its mobile app with discriminatory conditions, Defendant contributes to Plaintiff's sense of isolation and segregation and deprives Plaintiff the full and equal enjoyment of the goods, services, facilities, privileges and/or accommodations available to the general public. Plaintiff is deprived of the meaningful choice of freely visiting and utilizing the same accommodations readily available to the general public and is deterred and discouraged from doing so. By maintaining an app with violations, Defendant deprives Plaintiff the equality of opportunity offered to the general public.

21. Plaintiff has suffered and will continue to suffer direct and indirect injury as a result of the Defendant's discrimination until the Defendant is compelled to comply with the requirements of the ADA.

22. However, unless Defendant is required to eliminate the access barriers at issue and required to change its policies so that access barriers do not reoccur on Defendant's mobile e-commerce application, Plaintiff will continue to be denied full access and discriminated.

## JURISDICTION AND VENUE

23. This Court has federal question jurisdiction pursuant to 28 U.S.C. §1331 and 42 U.S.C. § 12188.

24. Plaintiff's claims asserted herein arose in this judicial district and Defendant does substantial business in this judicial district where it has multiple physical locations.

25. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) and (2) in that this is the judicial district in which Defendant resides, and in which a substantial part of the acts and omissions giving rise to the claims occurred.

26. Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Southern District of Florida that caused injury, and violated rights prescribed by the ADA to Plaintiff. This Court has personal jurisdiction over ANTHROPOLOGIE, pursuant to, *inter alia*, Florida's long arm statute F.S. § 48.193, a substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the Southern District of Florida. Specifically, on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services of Defendant's mobile app in Florida. The access barriers Plaintiff encountered on Defendant's mobile app have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on

a regular basis from accessing Defendant's mobile app. Plaintiff would like to become Defendant's patron and access the Defendant's mobile app in the near future but the barriers Plaintiff encountered on Defendant's mobile app have impeded Plaintiff's full and equal enjoyment of goods and services offered at Defendant's brick-and mortar stores. Defendant ANTHROPOLOGIE is authorized to conduct, and is conducting, business within the State of Florida and within the jurisdiction of this court.

## PARTIES

27. Plaintiff, Aishia Petersen, is and, at all times relevant hereto, is an Orlando, Florida resident. Plaintiff is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

28. Petersen is legally blind, and a member of a protected class under the ADA. Whereby, she has a disability within the meaning of 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.* and in 42 U.S.C. 3602, §802(h). Plaintiff was diagnosed with congenital glaucoma in both eyes by UM Health- Bascom Palmer Eye Institute, and consequently, is legally blind and the visual disability is permanent. Plaintiff is a legally blind individual who has a physical impairment that substantially limits the major life activity of seeing. Accordingly, she has a disability within the meaning of 42 U.S.C. § 12102 and 28 C.F.R. § 35.104. Plaintiff is a qualified individual with a disability within the meaning of 42 U.S.C. § 12131(2), 29 U.S. Code § 794 and 28 C.F.R. § 35.104.

29. Defendant ANTHROPOLOGIE owns, operates and maintains multiple stores called ANTHROPOLOGIE, within the Southern District of Florida, either through franchisees, affiliates, partners or other entities. Defendant's store sells ANTHROPOLOGIE fashion

merchandise to the public. Defendant also offers those items to the public through its mobile app. Defendant's store and accompanying mobile app work collectively and are public accommodations pursuant to 42 U.S.C. § 12181(7)(E).

## FACTS

30. Defendant is defined as a "Place of Public Accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other **sales establishment**," 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(5).

31. Each of Defendant ANTHROPOLOGIE's stores are open to the public and each is a Place of Public Accommodation subject to the requirements of Title III of the ADA and its implementing regulation as "[A] … other sales establishment," as defined by 42 U.S.C. §12181(7)(E); §12182, and 28 C.F.R. Part 36.

32. ANTHROPOLOGIE's stores offer for sale to the general public fashion clothing.

33. Defendant's mobile application is offered by Defendant as a way for the public to communicate with ANTHROPOLOGIE merchandise.  Defendant's mobile app also permits the public to register and create an account allows the general public to order and purchase fashion clothing, provides information about its products, and (among other things) provides: customer service, locate stores, buy fashion clothing.

34. A mobile app is a program that is downloaded and installed onto a user's mobile device, whereas a website is a site (place) on the internet where users visit it. The mobile application is saved on the smartphone, and in most cases an internet connection is optional in order to work. Both are ways of digital communication between the business and the users. A mobile app remains on the user's smartphone and is therefore ideal for frequent and repeated

communication. Mobile app push notifications are small messages that pop up in a user's status bar to let them know about an upcoming deal, reminders, and more. Push notifications are very convenient way successful way for business to reach and monetize their customers.

35. A blind person may give permission or consent to geolocation, push notifications and user's data sharing to third party if the mobile application is accessible to screen-reader (audio voice unable).

36. The mobile application is an integral part of the goods and services offered by Defendant's store, because Defendant's mobile app and its physical stores are heavily integrated, since the mobile application allows the public the ability to locate Defendant's stores, retail locations and sells merchandise.

37. The mobile application is an extension of defendant's physical stores. By this nexus, between the store and the mobile application is characterized as a Place of Public Accommodation pursuant to Title III, 42 U.S.C. §12181(7)(E) of the ADA.

38. Defendant has control over its mobile application content, design and source-code. Defendant's mobile app has a nexus to a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(E). Therefore, under the ADA, Defendant must ensure that individuals with disabilities have access to full and equal enjoyment of the goods and services offered on its app.

39. Blind and visually impaired individuals may access mobile apps by using accessibility features in conjunction with screen reader software that converts text to audio. Screen reader software provides the primary method by which a visually impaired person may independently use the internet. Unless the app is developed and designed with Accessibility features to be accessed with screen reader software, visually impaired individuals are unable to fully access app and the information, products, and services available through the app.

40. There are specific guidelines in place endorsed by the US Department of Justice in numerous U.S. District Courts. The international internet standards organization, W3C, has published WCAG 2.1 A (Web and mobile Content Accessibility Guidelines). WCAG 2.1 provides widely accepted guidelines for making mobile apps accessible to individuals with disabilities and compatible with screen reader software.

41. Plaintiff is legally blind and uses an Iphone that comes with "Voiceover" screen reader (in loud voice) feature in order to access internet mobile applications' content. Plaintiff's software is the most popular screen reader software utilized worldwide by visually impaired individuals for mobile phones.

42. Despite attempts, Defendant's mobile app did not fully integrate with Plaintiff's mobile phone Accessibility screen-reader, nor was there any function within the app to permit access for visually impaired individuals through other means. Her shopping attempts were rendered futile because the app was inaccessible. Therefore, Plaintiff was denied the full use and enjoyment of the goods and services available on Defendant's app as a result of access barriers on the mobile app. For example, product image description of most images is unavailable; multiple items have the same description ID (button), items without zoom feature should be larger; touch target is too small, poor contrast; multiple clickable item has the same on-screen location, and item may not have a label readable by screen readers.

43. Defendant's mobile application does not meet the WCAG 2.1 A level of accessibility. The mobile application should be accessible by keyboard only (no mouse or other pointing device). Multiple issues were found including: submits a form with errors then the error message(s) is visually displayed but is neither announced nor given keyboard-focus; mobile app buttons do not have the proper roles and are not accessible to "Voiceover"(Iphone).

44. By failing to adequately design and program its mobile application to accurately and sufficiently integrate with mobile screen-readers, Defendant has discriminated against Plaintiff and others with visual impairments on the basis of a disability by denying them full and equal enjoyment of the app, in violation of 42 U.S.C. § 12182(a) and C.F.R. § 36.201.

45. As a result of Defendant's discrimination, Plaintiff was unable to use Defendant's mobile application and suffered an injury in fact including loss of dignity, discrimination, and other tangible and intangible injuries.

46. The barriers on the mobile application have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff from attempting to use Defendant's mobile app.

## AMERICAN WITH DISABILITIES ACT

47. The failure to access the information needed precluded Plaintiff's ability to patronize ANTHROPOLOGIE's stores because, as a blind individual, Plaintiff needs to plan her outings out in detail in order to have the proper financing for a venture, and insure that she arrives at a given location.

48. Technology evolves, in these days, consumers are doing most of their shopping online. Defendant's provision of an e-commerce mobile application is an essential part of the services offered and is no different than the customer service to the public as part of ANTHROPOLOGIE's stores services, privileges and benefit to the public.

49. Title III ADA Part 36 regulation was amended to integrate section 36.303 Auxiliary Aids and Services "A public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities."

50. By this nexus, the Defendant's mobile application is characterized as an intangible service, privilege and advantage provided by ANTHROPOLOGIE's stores a Place of Public Accommodation as defined under the ADA, and thus its mobile application is an extension of ANTHROPOLOGIE's services, privileges and advantages made available to the general public by Defendant through its retail brick and mortar stores.

51. All Public Accommodations must ensure that their *Places of Public Accommodation* provide **Effective Communication** for all members of the general public, including individuals with disabilities. Binding case law increasingly recognize that private entities are providing goods and services to the public through the mobile application that operate as "Places of Public Accommodation" under Title III.

52. A person who cannot see, like the Plaintiff in this case, cannot go to Defendant's mobile app and avail themselves of the same privileges. Thus, the Plaintiff has suffered discrimination due to Defendant's failure to provide a reasonable accommodation for Plaintiff's disability.

53. Notice to Defendant is not required as a result of Defendant's failure to cure the violations.

54. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202 and Title III ADA Subpart E Section 36.501.

55. Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things: a failure to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such

goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of good, service, facility, privilege, advantage or accommodation being offered or would result in an undue burden. 42U.S.C. § 12182(b)(2)(A)(ii) (iii); see also 28 C.F.R. § 36.303(a).  Title III requires that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities." 28 C.F.R. § 36.303(c)(1). The regulations set forth numerous examples of "auxiliary aids and services," including "…accessible electronic and information technology; or other effective methods of making visually delivered materials available to individuals who are blind or have low vision." 28 C.F.R. § 36.303(b).

## **COUNT I – VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT**

56.  Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by Public Accommodations and requires Places of Public Accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36 Regulation.

57. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is legally blind and has a disability that substantially limits the major life activity of seeing within the meaning of 42 U.S.C. §§12102(1)(A) and (2)(A), has been denied full and equal access to Defendant's app. Plaintiff

has not been afforded the goods, services, privileges and advantages that are provided to other patrons who are not disabled, and/or has been provided goods, services, privileges and advantages that are inferior to those provided to non-disabled persons. These violations are ongoing as Defendant has failed to make any prompt and equitable changes to its app and policies in order to remedy its discriminatory conduct.

58. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove and this suit for injunctive relief is her only means to secure adequate redress from Defendant's unlawful and discriminatory practices.

59. Unlawful discrimination includes "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations." 42 U.S.C. § 12182(b)(2)(A)(II).

60. Unlawful discrimination also includes "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden." 42 U.S.C. § 12182(b)(2)(A)(III).

61. Defendant is in violation of the ADA by creating barriers for individuals with disabilities who are visually impaired and who require the assistance of interface with screen

reader software to comprehend and access digital mobile applications. These violations are ongoing.

62. Plaintiff has retained the law office of Acacia Barros, Esq. and has agreed to pay a reasonable fee for services in the prosecution of this cause, including costs and expenses incurred. Plaintiff is entitled to have reasonable attorneys' fees, costs and expenses paid by Defendant ANTHROPOLOGIE.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff **Aishia Petersen** hereby prays judgment against Defendant **ANTHROPOLOGIE INC.** and requests the following injunctive relief permanently enjoin Defendant from any practice, policy and/or procedure which will deny Plaintiff equal access to, and benefit from Defendant's services and goods, as well as the Court:

a. A Declaratory Judgment that <u>at the commencement</u> of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its mobile application is fully accessible to, and independently usable by, blind individuals;

b. A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to brings its app into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its app is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted

and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law;

c. That the Court enter an Order directing Defendants to continually update and maintain their mobile application to ensure that it remains fully accessible to and usable by visually impaired individuals;

d. That the Court enter an award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205; and Title III of the ADA Section § 36.505, and

e. The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated this 31st day of October 2020.

                                              *s/Acacia Barros*
Attorney for Plaintiff
ACACIA BARROS, P.A.
Acacia Barros, Esq.
FBN: 106277
11120 N. Kendall Dr., Suite 201
Miami, Florida 33176
Tel: 305-639-8381
ab@barroslawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of October 2020 that the foregoing document has been filed using CM/ECF system and will be served via email when Defendant/Defendant's counsel enters an appearance.

                                            */s/Acacia Barros*
Attorney for Plaintiff
ACACIA BARROS, P.A.